Good morning to everyone. Our first case on the call of the docket today, Wednesday, March 14, 2012, is agenda number four, case numbers 112393 and 112398. And I trust I'll learn how to pronounce this name when the attorneys step up. Bonhomme v. St. James, counsel for the appellant-slash-appellee. Please proceed. Good morning, Your Honors. May it please the Court. I am Phyllis Perko. I appear today on behalf of the defendant appellant, Janice St. James. We seek a decision that plaintiff's third amended complaint is insufficient to state a cause of action for fraudulent misrepresentation. We present two fundamental arguments on appeal, and these are, first, that the cause of action for fraudulent misrepresentation does not and should not extend to the facts alleged, which refer to a personal setting and personal circumstances. And secondly, that the element of justifiable reliance is not well pleaded, that the complaint does not contain sufficient facts, and insofar as it contains allegations, those allegations are of a most conclusory nature, referring then to the initial argument that the cause of action should not be extended to the facts that bar. There is no question but that traditionally the tort or cause of action for fraudulent misrepresentation is limited to a commercial or business context. As recently as 2008, when this Court decided the case of Doe v. Dilling, it recognized this historical background of the cause of action, and indeed refused to extend the cause of action under the facts presented in that case, finding that they were inappropriate, that the purely personal setting presented in that case was inappropriate for recognition and expansion. In the present case, while we submit that the precise allegations and basis for the claim of fraudulent misrepresentation by the plaintiff is not completely clear, the gist of the case is that the plaintiff has claimed misrepresentation by her deceased fiancé's parents regarding his HIV-AIDS status. The gist of the claim is that the defendant created 20 or so fictional characters and caused the plaintiff to interact with these characters, and particularly caused the plaintiff or induced the plaintiff to form a romantic relationship, particularly with one of these characters named Jesse James. The appellate court opinion in this case denied that the its recognition of the tort in these circumstances was an expansion into a purely personal setting. In this regard, the appellate court noted that it was alleged that the plaintiff had parted with money or property, things of value, as a result of the fact that the plaintiff was a victim of fraudulent misrepresentation. We submit that this is an improper interpretation of what a personal setting is. A personal setting should be distinguished from what, from those settings that traditionally have been recognized regarding the tort. Those settings were Inster, Prosser, and Heaton in their treatise, identify business as a result of the fact that the plaintiff was a victim of fraudulent misrepresentation. In this case, there is no aspect of business dealings or commercial transactions, bargaining transactions, as the nature of the intended scope of the action. There is no aspect of business in the relationship between the plaintiff and the defendant in this case. There is no aspect of bargaining. The nature of their relationship is totally devoid of business. It's totally devoid of a bargaining aspect. Counsel, do you think this case is more accurately described as an emotional distress case, where the distress was caused by the misrepresentation rather than the fraud? I would believe that it would be somewhat easier to understand the case in that context. We, of course, deny that the complaint, and that would have been the second amended complaint, that the allegations in that complaint were sufficient to state a cause of action for extreme emotional distress. But nevertheless, I would submit that it is easier to understand the case in that context than it is to compare it to fraudulent misrepresentation. But aren't you saying in your arguments that the public court here confused the act of lying or making a misrepresentation with the tort of fraudulent misrepresentation? Well, I'm saying that they improperly expanded the cause of action as far as... Well, you're saying the plaintiff didn't lie in order to defraud, I mean, the defendant didn't lie in order to defraud her of money. Well, no, we deny that she made any misrepresentations to secure money from her, to secure gifts from her, to secure anything else of value. The allegations of the complaint do not create that type of nexus. We're submitting that the allegations of the complaint are very unclear as to exactly what the complaint is. For instance, in describing the alleged misrepresentations by the defendant, there is no description of the language used in the alleged misrepresentations. We, for instance, claim that this violates the rule of specificity that is required in this case. This is a longstanding rule that fraud must be pleaded with specificity. In this case, we see conclusory allegations that the defendant misrepresented the identity of the fictional characters. We don't see an allegation of any precise language that may have constituted this misrepresentation. So we certainly deny that there's any nexus in the complaint to show that any representations by the defendant induced any specific conduct by the plaintiff. This, of course, is a requirement in fraud. So we maintain that the appellate court decision is a great deviation from stare decisis. It's the first case in the state of Illinois to extend the cause of action for fraudulent misrepresentation into a purely personal setting. We believe that this expansion of the tort by the appellate court should be reversed. Generally speaking, in order to recognize a new cause of action or to expand an existing cause of action to different circumstances, there must be an underlying policy to justify the expansion of the cause of action. Additionally, a cause of action should not be expanded or recognized if it cannot be extended. It cannot be clearly and objectively defined so that it can be consistently administered by the courts. We maintain that there is not a public policy that justifies expansion of this cause of action, and we maintain that the expanded cause of action is incapable of precise definition, that its limits and scope cannot be adequately defined. Regarding the policy question, it is, of course, well established that the role of the courts is to determine existing policy. It is not the role of the courts to set policy. There is no public policy that covers the issue of the facts at bar, that covers the matter of private interpersonal relationships. Generally speaking, private relationships are not subject to the control of the law, and there are not existing rules as to how private relationships in general should be conducted. Additionally, the law of Illinois never has recognized a broad duty to tell the truth in all circumstances, or as it applies to this case, to refrain from advancing fiction. The appellate court does make a statement to the effect that there is a duty not to present fiction as fact. This, of course, is a great deviation from existing law. Existing law does not establish such a duty. Such a duty simply does not exist. Now, I would, of course, be less than candid with the court if I did not acknowledge that there has been considerable criticism. Certainly the appellate court opinion significantly criticizes the conduct of the defendant in this case. But I submit to the court that they're assuming that everything that has been said is true, and assuming that there is no evidence that the plaintiff herself did not intend to engage in a virtual or fictional relationship, assuming those things. Nevertheless, the law should not cover this conduct. There is a difference between an aspiration, a desire that certain conduct not occur, and on the other hand, the establishment of a rule of law that such conduct is not to be allowed, and that it will be controlled by the courts. In addition to the lack of policy underlying expansion of the cause of action into the purely personal setting, there would be great problems defining the scope of such a cause of action. And we refer particularly to the issue of materiality. What is a material misrepresentation, which is the first element of the cause of action defined by Illinois law? What is the materiality of any statement in an interpretation? It is submitted that personal relationships are so diverse, so unique, so sui generis, that it is impossible for the courts to determine what a material misrepresentation would be. We have cited for the court one case from Massachusetts, Conley v. Rameri, where specifically the court refused to extend a fraud action to an interpersonal relationship, to a romantic relationship. In that particular case, the defendant allegedly had misrepresented his ability and willingness to father children. So in a business transaction, in a commercial transaction, the ambition of the parties involved in the transaction generally is quite clear, and their interaction is narrow. In the interpersonal context, there is a very broad interaction that has many aspects. The ability of a court to determine what is material to that relationship is extremely difficult, if not impossible. So it is our position that policy does not support expansion of the tort in this case, and furthermore, that administration of such a tort in the personal context would be difficult or impossible for consistent application for definition of what is material, what a tort is, and what a romantic relationship is. Our second primary argument on this appeal is that the element of justifiable reliance was not well pleaded in the Third Amended Complaint. Justifiable reliance, of course, is one of the essential elements of the cause of action. In this Court's discussion of justifiable reliance in its dealing opinion, this Court characterized justifiable reliance as a critical element. There is virtually nothing in the Third Amended Complaint that addresses the element of justifiable reliance. We maintain that the only reference to justifiable reliance in the complaint is found in its paragraph 81, and in that paragraph, the plaintiff states and relies upon the repeated or the continuing misrepresentations by the plaintiff. This viewpoint was accepted by the appellate court in its opinion. The appellate court says that the repeated misrepresentations justified the plaintiff's reliance on the alleged misrepresentations. However, it must be recognized that the plaintiff's misrepresentation is a separate element from justifiable reliance, and it is our position that this separate element requires separate facts to support it. There are no such separate facts when it is simply concluded that the repeated misrepresentations were sufficient to establish justifiable reliance. This Court's special concurrence in dealing gives considerable attention to the question of what the proper standard is for justifiable reliance. We maintain that the proper standard is one that requires at least some cursory investigation of the misrepresentation by the plaintiff. It is fundamentally unreasonable, an unreasonable risk taking for a plaintiff, for the plaintiff in this case, to have engaged in personal relationships with strangers to the extent of incurring damages, and then expecting that the law will reward the unreasonable risk that was taken. Alternatively, if this Court should accept the restatement's approach to the justifiable reliance element, there certainly was adequate cause, as shown by the allegations of this complaint, to put the plaintiff on notice and to indicate that there may be some other reason for the plaintiff to be on notice. And I would say that the statements that were being made may well have been false. I see your light is on. Do you want to touch upon the abandonment issue? With reference to the other case. I have my time for rebuttal. I was going to refer to it at that point. It should have been the obvious falsity of any representations that the fictional people were real people, should have been obvious to the plaintiff at the time when face-to-face meeting was delayed for months, and then when it was finally arranged, it was evaded. These facts are such as to have given the plaintiff the opportunity to be on notice. And to have given the plaintiff adequate notice of the falsity, even of the statements, even under the restatement test. So it is our position that the third amended complaint, by its very allegations, negates the element of justifiable reliance. Again, the complaint is of the most conclusory nature. It does not describe the words used in any misrepresentation. It does not describe what plaintiff's expectations may have been in entering into the relationships, or continuing the relationships, or why she acted as she did. And we request a reversal of the appellate court opinion. Thank you. And before your time starts running, before you announce yourself, you've decided to split it 10 and 10? That's correct. I will be addressing the first half of the argument with respect to the fraud count, and my colleague, Adam Abanchik, will be covering the abandonment issue with respect to the count in the second amended complaint. Just so you know, when you get to your 10 minutes, when John tells us, we're going to cut you off in fairness for your co-counsel. We have a lot to cover, but yes, I'll do it as quickly as possible. Please identify yourself. Good morning, Your Honors. May it please the Court, my name is Dahlia Saper, and I am here on behalf of Plaintiff Appellant Paula Bonhomme. Well, what we've heard right now is that there's absolutely nothing at issue with respect to the facts as alleged. There's no 2619 motion here denying the fabrication of lies, denying the fact that defendant created Jesse James, denying the fact that she additionally corroborated the existence of Jesse James with an additional 20 other characters, nor does she deny that she happily accepted $10,000 worth of gifts over the course of a year and a half. Most importantly, defendant does not stand before you here today and deny that she engaged plaintiffs. She initiated the relationship initially through a totally unrelated chat room devoted to an HBO television show, not in a fantasy role play. Counsel, is there anything in Doe that would allow for the future expansion of fraudulent misrepresentation into the personal arena? Yes and no. First of all, the Doe case involves, as we know, an HIV situation where the plaintiff sued the parents of her fiancee or deceased fiancee for not letting her know that indeed she did, that her fiancee did indeed have HIV. So in that context, there were certain factors that the court had to decide. Most importantly, before I get into distinguishing of that case and this case, note that that case had a very lengthy history. It was extensively debated through discovery, expert testimony, depositions of multiple people involved, which goes to show that the complaint survived the fundamental question of whether or not it could survive as a fraud count. We're here only to decide not the merits of the case, not whether or not plaintiff was justified in deciding to believe these comments, not whether there was any material misrepresentation, although again, I have basis to explain why those still do stand. But essentially, the facts after discovery allowed the court to determine that in that personal situation, in those certain circumstances, there was evidence to show that she should have, for example, been on notice. She should have not relied on the fact that the parents, a third party. What I'm getting at, you don't dispute that this is a personal comment? I do dispute it for two reasons. Well, one, because there is pecuniary gain on the behalf of the defendant. As the appellate court recognized, we have here the transaction of $10,000. What's also different is that this wasn't a traditional boyfriend-girlfriend relationship where the parties meet in some other, you know, real life setting. We have here in a relationship that was initiated purely on fraud. But for plaintiff's misrepresentations with respect to their relationship, she would not have engaged in an online romantic relationship. But plaintiff did, and this is where the application of a duty in cases that are not traditionally commercial applies. So defendant discusses duty in her briefs, especially with respect to adoption cases and cases involving the transmission of the fraud count in noncommercial settings to a situation where there was some overarching policy reason or duty to prevent the misrepresentation. In the adoption agencies, clearly we want adoption agencies to disclose the background of the children. And in the case where a person has a sexually transmitted disease, we want to prevent the transmission of that disease. In this case, we want to prevent simply cons. We don't want someone to be able to go under the guise of the child and have to go through an extraordinary number of people in order to for personal sadistic gain manipulate plaintiff and then also benefit through trips to California and gifts that include an iPod. Gifts that in the totality. If we agree with you, would every person who gets involved in a relationship with someone and then later finds out, for example, that they're married, would they have a cause of action? I mean, they could. You could have gifts that are just given in that situation. Everyone can attempt to bring a cause of action, but the elements of fraud are not being disputed, right? So this is a different case than something where, for example, I go on match.com and the person tells me he's 6'2 and in fact he turns out to be 5'2. Because in that case, I still have to, for example, prove the element of damages. How was I harmed in the instance of me going on this date and realizing this man was actually 6'2? I suppose in the hypothetical I gave you, the person got gifts, expensive gifts, jewelry, you know, trips. And for that reason, is that sufficient damages? I think that it's a factual determination. And so the plaintiff may attempt to bring the cause of action. And in some sort of affirmative defense in a 2619 motion, there can be demonstrated that she had no reason to believe he wasn't married or that she had no reason to believe the material misrepresentation, then the fraud count would be dismissed on its face. What I'm arguing is that this stage, it's premature to make a decision. We need to go into the discovery stage and let the parties sit through depositions and explain their motivations and mental state of mind when this transaction occurred. Two things. If this court decides that this is a commercial transaction and not, I mean a personal transaction and not a public transaction, we would have to expand the tort of fraudulent misrepresentation to get there. So in that context, what would be wrong with a 2615 motion? And then I'll ask my second point after that. Well, because the complaint adequately sets forth plenty of factual assertions that support the contention, A, of a duty in the event that you want to apply some public policy reason. We've seen an increase in the increasing interest in general public policy to maintain people's transparency in the context of business and personal relationships. If you're looking at another jurisdictional body, look at the FTC. They just set out guidelines governing material connections with respect to bloggers. I know I'm getting very tangential, but the point is we have, we can't ignore that the medium of the Internet is increasingly used as a tool, as a business transaction and a personal one. I mean, you'd agree with that? I would to some extent, but I disagree that that excuses con-like, hoax-like behavior that is so beyond a Nigerian scam, you know, you get where you can clearly tell the misspellings and the way that it's presented show that it's a scam. Here we have a slow, dripping hoax. Drip by drip by drip by drip, the facts were accumulated. It wasn't as if, hi, I'm Janice St. James, please give me $50,000 I want to date you. Let's stop there for a minute. It says justifiable reliance, right? So it's not only reliance, it's justifiable. So if this court finds that giving $10,000 in Christmas gifts to a person who allegedly lived in another state and whom the plaintiff had never met, we have to in turn look at that and say whether that reliance was justifiable in light of the fact that the Internet is a vehicle known to perpetrate fraud, right? Yes and no. I, for example, handle other cases in my practice that involve the fraudulent creation of fake Facebook and fake LinkedIn accounts. Just because someone acts in a deceptive manner and uses a website doesn't automatically mean that people on the Internet are bad. You know, people buy things, they give their credit card online, they trust that the transactions they utilize over the Internet has some veracity, otherwise our entire economy wouldn't work. I mean, that's the case. You have to look at things on a case-by-case basis. It's premature to make a rule without assessing the facts as it relates to each situation that's presented before you. This is not a simple case of fraud. Again, this involves a woman who, I mean, let's take it from the perspective of the plaintiff. She's innocently engaging in a chat room about a TV show she likes to watch. She's contacted and she's not even expecting under the context of where she made this relationship that someone would have the time or the desire or the energy to create, not just to pose not just as herself, but also as this man named Jesse. And every time she did try to investigate, and so I contend that, and as the complaint demonstrates, she wasn't passively accepting everything as true. Every time she questioned something that the Janice St. James, the defendant, was arguing, a new character would come in to corroborate her suspicions. For example, we have the posing of defendant as Annie Martel. Annie Martel is a real-life human being. She is actually a therapist who has a practice. Defendant misappropriated her name, her likeness, and then communicated with defendant as if she was a licensed therapist. If you look up Annie Martel, I mean, at what point do the facts stop, the truth stop, and the lies start? It's so extensive that, again, it's unreasonable to expect, as the appellate court has already identified, it's unreasonable to expect defendant to have inquired about the veracity of these statements in light of the situation. And moreover, she didn't pursue a virtual relationship. On two occasions, she purchased flights. She purchased plane tickets and hotel rooms. She had every intention to meet this individual, and she engaged in phone conversations. She received package from different countries, but she didn't receive any of those phone conversations were of a sexual nature at times, which means Janice St. James had the audacity to sit there, pose as a different person, and engage Paula in conversations that are very intimate that she would, of course, never have engaged in had she thought that the relationship was not a real one. Time has expired. Good morning, Your Honors, and may it please the Court. My name is Adam Urbanchik, and I'm also here to argue on behalf of the plaintiff, Paula Bonhomme. We continue a court counsel's argument that this case is not just about defendant's fraudulent misrepresentation, but also about her defamatory and emotionally distressing activities. And we're here to ask this Court to reverse the Second District Appellate Court's indecision on the dismissal of counts one through four of the second amended complaint. At issue is whether the absence of a mere footnote in a third amended complaint, in light of the complete satisfaction of this Court's fundamental aim in Foxcroft, is alone enough to abandon those claims. We argue that it's not, and that the lower court's citation of Ottawa and Childs to support that contrary notion is improper. What is undisputed is that six counts of the second amended complaint were dismissed with prejudice, and one, the count for fraudulent misrepresentation, was dismissed without prejudice. Plaintiff immediately filed a motion to reconsider those dismissals. That motion was argued by defendants. Ultimately, that motion was denied. After that, plaintiff immediately filed a notice of appeal of the denial of that motion to reconsider, and additionally filed motions for a 304A finding and a Rule 308 certification. That motion was also denied, unfortunately, and plaintiff was specifically directed, like the plaintiff was in Funes, to withdraw her notice of appeal and specifically file a one-count third amended complaint stemming in fraudulent misrepresentation, eschewing the other four counts that were up that, the other counts that were the subject of the previous notice of appeal. Plaintiff did so. The third amended complaint was dismissed, and then thereafter immediately filed another notice of appeal for counts one through four of the second amended complaint and count one of the third amended complaint. Arguments for and against those dismissals were briefed and substantively argued at the lower appellate court. So what Foxcroft is holding, literally, is that where an amendment is complete in itself and does not refer to or adopt the prior pleading, the earlier pleading ceases to be part of the record for most purposes. Now, a strictly literal interpretation of that statement, that holding, is somewhat difficult to apply in light of the verbiage of that statement. However, Foxcroft is generally interpreted to represent a policy. And that policy is to make two very arguably indefensible goals. One, to ensure that the trial judge and the defendant are perpetually aware of the claims at issue and the claims which are to be defended against. And two, to ensure that a plaintiff can't, to ensure that a plaintiff is prohibited from surprising either the court or defendant with new claims. Now, opinions from this court and various appellate courts, both before Foxcroft, such as Bowman. Pretty bright line language to be a policy, right? How can a defendant, by silence or waiver, or I mean, in this case, how can a plaintiff, by silence or waiver, make something a part of a record through your plaintiff's own conduct? What we would submit to the court is that. And what I'm getting at, counsel, is Foxcroft says, ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn. I mean, is that policy or is that a bright line rule that, you know, you don't speak up when you file the amendment complaint, you lose? Your Honor, I believe if you look at the procedural, factual record of Foxcroft itself and its progeny, you'll see that what's going on in these cases is that plaintiffs are filing these serial complaints. And Foxcroft filed a complaint, dismissed, immediately filed an amendment complaint, filed notice of appeal. After that, tried to incorporate accounts from the original complaint. The court says, we're not hearing that. Cases, Foxcroft, Ottawa, Childs, Bowman, Abrams, Boatman, Doe, Stenwell, Pickle, everything I was able to find. You're having plaintiffs filing between two and nine successive complaints. And then after that, filing a notice of appeal and trying to bring back counts that are months or years old. That's not what happened in this case. And the procedural facts of this case are very distinguishable, completely distinguishable from the rest of the jurisprudence on this topic, because there was a second amended complaint. After that was dismissed, after six of the counts were dismissed with prejudice and the one count was dismissed without prejudice, we immediately filed a motion to reconsider the dismissal. After that was denied, we filed a notice of appeal. Counsel, the Foxcroft rule has been on the books for 20 years, right? It's 83? Yeah, 83. So over 20 years. And I would suspect that along the line there were motions to reconsider, notices of appeal, what have you. And are you aware of that rule ever being challenged in the way you're challenging it today? Your Honor, I don't believe I'm precisely challenging it. What we're submitting to the court is that the rule isn't as bright line, and that what supports the less bright of a line rule are those policy considerations, and that what we're attempting to do, along with in the court of appeals, briefing at the appellate court and in open court, you know, the defendant in open court said that, well, the defendant presumed that we did preserve the right to appeal that. Now, the court of appeals just at the beginning of oral argument, the first thing they asked me when I was up there, you know, did you preserve the right to appeal this? Yes, of course we did. This is what we did. Okay. And then both sides proceeded to argue substantively, just as we had briefed over the previous months, and to the tune of hundreds of pages in exhibits. So, you know, going back, the two policy considerations that we're talking about that we're saying are underlying this less bright of a line ruling in Foxcroft, which, agreeing with our argument in this case, does not have to overrule, is that the trial judge and the defendant are aware of all the claims at issue. That has always been the case. Second, the Foxcroft goal is to prohibit a plaintiff from surprising either. This has happened in this case. The trial court instructed plaintiffs to withdraw her notice of appeal and specifically file a one-count third-amended complaint. And after that was resolved, plaintiffs could go and appeal everything. Just to clarify for me, you're not seeking an overruling, seeking us to overrule Foxcroft. The amicus says that you are not. We are not. Our sense is that that's not necessary. Two, neither the trial court nor the defendant was ever prejudiced by those counts being live on appeal. As I mentioned, the defendant admitted in open court that it was under the impression that counts one through four of the second-amended complaint were preserved. And this is understandable because the substance and theory and format of the second-amended complaint hadn't been abandoned but had been maintained. That's why we're arguing it in the first place at that level. So there's no evidence that the policy considerations fundamental to this Court's holding in Foxcroft have been disturbed, require the reversal of Foxcroft or the overruling of Foxcroft. And there's no case law that requires that a plaintiff in Ms. Bonhomie's specific situation had abandoned the claims at issue. What the lower appellate court cites in Ottawa is that to preserve for appeal the dismissal of claims, a plaintiff must either stand on the dismissed counts and challenge the ruling in the appellate court or reallege or incorporate the dismissed counts in a subsequent complaint. Now, this narrows Foxcroft a little bit, but it still doesn't completely preclude plaintiff's argument in this case. Plaintiff did file a motion to reconsider, as the plaintiff in May did, after the dismissal of the second-amended complaint. So we have plaintiff, Ms. Bonhomie, standing on her counts in the second-amended complaint and challenging that court's ruling. It wasn't all the way through to the appellate court, but the challenge still existed. So this is unlike the plaintiffs in either Ottawa or Foxcroft. And what Childs does is merely give an example of a way in which a plaintiff could satisfy the elements or the goal of Foxcroft. It is true. Plaintiff in this case could have included a footnote in the third-amended complaint speaking tersely to the fact that, well, we'd still like to incorporate counts one through four of the second-amended complaint. That could have happened. Our argument is that just because it didn't happen doesn't mean that's abandoned. And that also doesn't mean that Foxcroft is dissatisfied or that Foxcroft has to be overruled in order to agree with us. How do we know it's not abandoned? How does the Supreme Court know or the trial court or the defendant? The appellate court. How does the appellate court know that the plaintiff hasn't abandoned the counts that have been dismissed? Well, after filing a motion to reconsider and then filing the third-amended complaint under the court's orders specifically to just refer to those four counts, and then filing notice of appeal and briefing it on appeal, I would submit that we would not have argued against the dismissal of counts one through four of the second-amended complaint had we not intended to proceed along those arguments at the trial court level. And how far would that go back? In other words, if there are three or four complaints before and different counts are re-alleged as they go along, how would we articulate a rule here? How far it would go back? Right. Under the case law, it would be two. The case law that we set in our briefs and that preclusion of claims going up on appeal where there have been two complaints filed immediately without any motion to reconsider or notice of appeal filed, like sandwiched in between them. Foxcroft was two. Ottawa was three. Bowman was two. Abrams was four. Boatman was nine. Doe was four. Stenwald was four. Pickle was four. That's rather egregious, especially Boatman. I mean, it was a State administrative claim. You may conclude. Okay. To conclude, Your Honors, plaintiff did file her motion to reconsider notice of appeal in between the second-amended complaint and third-amended complaints. And the lower appellate court's determination otherwise should be reversed. Thank you. Before addressing the questions of abandonment, preservation and forfeiture of issues, which is at the core of the Foxcroft question that is before the Court today, I wish to address the issue of the plaintiff's premise that the trial court ordered it to file the third-amended complaint. There simply is not such an order in this case. The record on appeal consists only of common law documents, and none of those documents support a viewpoint that the trial court ordered the filing of a third-amended complaint. And very certainly would not support a conclusion that the trial court ordered a third-amended complaint to be filed without reference to a second-amended complaint or the dismissed counts of the second-amended complaint. There are some cases that refuse to apply the Foxcroft rule. And these cases do involve situations where a trial court directed a certain kind of filing. These include the Zurich insurance case referring to necessary parties, the Funes case that involved the ad hominem clause, actually the Mag case, and the Ad Bar is not such a case. The only thing that the trial court, the only orders that the trial court made in this case respecting the third-amended complaint, let's say, were to deny 304 language for an interlocutory appeal from the second-amended complaint, and to grant leave to refile and replead on the count of fraudulent misrepresentation. So we maintain that that is a fundamental inaccurate premise that apparently underlies the plaintiff's argument. With reference to the issue of abandonment, Foxcroft speaks of effective abandonment. So we submit that what Foxcroft is all about is the preservation of issues. The Foxcroft rule might be compared, for instance, to the rule of contemporaneous objection. It is a procedural rule that addresses the question of maintaining and preserving issues for the issues in front of the trial court. The underlying policy of Foxcroft is as valid today as it was when it was decided. With reference now to the oral argument in front of the appellate court, it is, of course, clear that this issue was missed by the defendant, which is to say by counsel before you today, regarding the preservation of the issue. However, as I understood the question posed to me during oral argument in the appellate court, it had to do with the plaintiff's intent in filing the complaint and failing to preserve the issues from the second amended complaint. Intent, of course, is not a question under Foxcroft. Intent actually is never a question or very rarely a question when a court is addressing preservation of issues. My intent, when I fail to make a contemporaneous objection, is to fail to file a mandatory post-trial motion is completely irrelevant. I have forfeited the issue. And so in this case, there is a forfeiture by the plaintiff for failure to follow a well-established rule. This rule should be followed. It is a clear, it is an objective rule that lends itself to consistent application. A subjective rule that investigates the intent of the pleader is a rule that will increase litigation, and it is likely to lead to inconsistent results. The question in this case is whether the plaintiff's intent is not a question of prejudice. Referring then just very briefly to the rebuttal matters regarding the fraudulent misrepresentation issue of the third amended complaint. It has been argued today that the third amended complaint should proceed in order that the state of mind of the parties can be explored. It is our position that the state of mind of the parties, as it respects particularly the element of justifiable reliance, is a matter that had to be pleaded in order for the plaintiff's intent to be explored within the terms of the complaint. There are statements today to the effect that defendant acted for personal sadistic gain, that there was a hoax. There were many comments I would submit to the plaintiff that were not found in this complaint. And because the types of factual matters that were addressed during the plaintiff's argument to the court this morning do not appear in the third amended complaint. The third amended complaint is insufficient. And for these reasons, we ask the court please to affirm the dismissal of the second amended complaint and to reverse the appellate court on the issue of the third amended complaint and to affirm the trial court's dismissal of the third amended complaint. Thank you, Your Honors. Thank you to both counsel for your arguments today. Case numbers 112393 and 112393. And that brings us to agenda number four.